Good morning, I'm John Rhodes from the Missoula office of the Federal Defenders of Montana. I represent Brian Charette. I would like to reserve two minutes for rebuttal. This case is about the separation of powers. The executive branch has failed its burden of proof. It's failed on appeal to comply with procedural rules. And now it's asking the judicial branch to bail it out. The government offered no evidence that Mr. Charette did not have a permit to take a grizzly bear. Counsel? Go ahead. Let me tell you what my problem is. There are a couple of Ninth Circuit cases that seem to say directly that there are four elements to the crime that your client was convicted of. But it seems to me that in both of those cases, the panels were not being asked to decide whether or not the possession of a take permit is either an affirmative defense or an element of the crime. When I look at the statutory provision that I asked you both, the panel asked you to review prior to your argument here today, it clearly says it's an affirmative defense. Why should we not decide in this case and clarify Ninth Circuit law that there are only three elements to a taking under Title 16, and that if Mr. Charette wanted to raise the defense that he had a permit, it was his burden under the statute to do so, and he failed to do so? First, as briefed to the court, I don't think there can be sufficiency of the evidence review, which was the issue in Claudette, without identifying the elements of the crime. But there was no challenge to the fact that the defendant in that case had no permit. That's the problem I'm having. It simply wasn't an issue that the panel had to decide. Then we get back to the separation of powers problem. Well, let me approach it a little bit differently. Supposing rather than going at it exactly as Judge Tallman does, I say, okay, they have to prove all four elements. And supposing that then I look at the Ninth Circuit law and I find they don't need to prove the element about the permit. Why is that not a harmless error? So that goes to the separation of powers issue? Well, just a minute. It addressed harmless error. Don't address separation of powers. That's where you started out. I think that's a great clarion call for your side. But address harmless error. This is a harmless error analysis because harmless error analysis can be made as to the elements, whether they were proven or whether they weren't. And it's not a constitutional error. So why isn't it just harmless error? Then you go to the self-defense claim, which was a step. We're not to the self-defense claim. We're right here at the permit claim. And so at that particular point in time, I'm still saying to myself, well, I'm saying, why is this not a harmless error? What makes it not harmless error? Conti says it's not structural error, so there's not automatic reversal. Instead, it's a harmless error analysis. So even if there wasn't enough evidence, why is it not harmless error? If you're going to cut out the permit as an element, then you're correct. Well, but I guess, okay, then I'm correct. But I guess I'm not cutting it out, all I'm saying to you, and I'm trying to ask you the very straight question. If, in fact, whether the state proved it or didn't is harmless error, then I don't have to worry about that. There's enough evidence to convict on the other parts, and we can go on now to the self-defense theory. But I just wanted your answer about that, because there's no question that the ex-wife was going to testify, and your client says, well, I just as well plead guilty. There's no question that your client suggests he wasn't going to go through the hassle of trying to go through this situation. There's no question he first denied, then admitted when he was told that he was going to have a false statement penalty that he did this. And there's no question that he never said he had a permit. And there's no question that after hearing the elements of the proof, he never said anything about it. He was never informed of the elements of the permit? Well, not just a minute. Didn't he go in front of the judge and try to admit his guilt a couple of times? Well, that would violate the right to trial. Didn't he go in front of the judge? He knew what the elements were. But that's not evidence. And she was very clear. That's your response. She was very clear that she was going to enter a ruling on the trial based upon the evidence that was admitted at trial. Correct. The judge was very clear. Which doesn't include the colloquy, although it certainly caught my attention as well, that he was trying hard twice to change his plea. But that would violate his right to trial. Yes. If you're going to use earlier procedural evidence if you want to. Well, counsel, on your affirmative defense, I think it probably is affirmative defense, by the way. But as to self-defense, if we can turn to that, that would require that your client show that he was, that the question is subjectively or objectively, you know, afraid, afraid for his life because the grizzly bear was, the dog was bringing the bear back to him. Yes. That's his story. And I don't mean that pejoratively. The witnesses described the same thing. But if all that were taken as true, he still would have had to report it within five days, right? There was no, that is the law, there was no evidence one way or the other. And he didn't report this within five days, right? There was no evidence one way or the other offered if it was reported. That is not in the record. Well, there's awfully strong circumstantial evidence to affirm. There's evidence about the efforts made to find the bear, to find where it was buried, and we know the date when those efforts were made, and it was many weeks later, right? Yes. So why wouldn't we find that there's harmless error as to the affirmative defense of self-defense? First, it has to be analyzed subjectively. That's the Wallin case, which was my case, tried before the same judge. Yes. Affirmed by Chief Judge Christensen. So when Magistrate Judge Lynch adjudicated this case, he had to apply an objective standard of self-defense. Right. So your argument is that there was an error made there about whether there was subjective versus objective fear of the bear. There was an error made, period. But the second step of self-defense is that he has to have reported it. So what is your response to that? That's not relevant to the self-defense, the subjective good faith belief as to whether— I'm not suggesting that it is, counsel. I'm saying even if you win on that, even if you win, that there was error in the trial court and that he should have been held to a subjective standard. And he's got what in Alaska we would say is a classic example of a very dangerous circumstance, which the dog brings the bear back to the person if somebody gets mauled, and that's a pretty common scenario. And it's one that Alaska has in common with Montana. So I understand that. But if you win on that, right, isn't there still the problem of there's nothing in the record to indicate that this was reported within five days? And there's a very strong indication that that was not the case. There is nothing in the record regarding reporting one way or the other. So what I've asked you to address is there's circumstantial evidence certainly that it wasn't reported because there's efforts made weeks later by law enforcement to try to find where the bear was buried and they couldn't find it or they had trouble finding it. So from that, can't we— And he drug the carcass into the woods, right, the day that he shot, right after he shot it, which is circumstantial evidence that he's trying to hide the fact that he killed the grizzly bear from those who might be inquiring about the shooting. The fact remains there may be circumstantial evidence regarding reporting or not reporting. There's nothing in the record. No direct evidence. Correct. But in effect, as to this one, if we're looking at this self-defense and we're saying, okay, they don't have to prove self-defense, I'm not sure the government can really argue that because they haven't argued it any place. But if, in fact, they can argue it, then we're looking at, is this, again, harmless error? And so I want to focus you on Judge Christensen's question. If, in fact, we're down to harmless error, why isn't this harmless error? Because, as Judge Christensen alluded, the bear was 30 feet away. That's 10 yards. It was standing at the fence, perhaps going over the fence. Standing on the other side of the fence. Standing up at the fence. And this was a sow as opposed to? Yes. So it's an adult bear. Right. And so it seems to me that your client had a very strong self-defense defense. Right. That's a pretty strong fact pattern. It's compelling. We don't decide findings of fact, but it is a compelling showing. In fact, if I give you that, I still run into the problem of he would need to report it, don't I? Then we would argue that under the harmless beyond a reasonable doubt standard, because the record is bereft of direct evidence regarding reporting, it still would have to be remanded. So you think the standard of review is what saves you? That's your argument? That it has to be harmless beyond a reasonable doubt? And self-defense really wasn't the best? It's not a substantial weight of the evidence analysis. It's underwhelming. We made that very clear. Right. Let me ask you one other question. It's my understanding from reading the record that your client elected not to testify because his counsel told him the court would not consider his subjective testimony on self-defense. I'm not sure where that would be in the record. That's in ER 111 and 12. I'm not sure how my advice to my client would get on the record, Your Honor. Well, the reason it was there is because you were in there to change the plea. But, again, I don't think you can consider those proceedings without violating the right to trial. Okay, I understand. But all I'm trying to suggest is, is it harmless error if your client, taking your advice, would have said, well, there's no reason for me to tell my story here because it's an objective standard rather than a subjective standard, and, therefore, I won't testify. Whereas if he'd have known it was a subjective standard, he may have testified. That could be, Your Honor, and the court was applying an objective standard. Well, it's sort of a double whammy, right? If he'd understood that it was an affirmative defense and that he had to prove his own subjective belief, I don't know how he could not testify. That would be true, and what we would point to is the lack of investigation. There was no questioning about self-defense. There was no questioning about fear. My client volunteered that these bears were notoriously aggressive was a phrase that he used. Yes, Counselor, but I'm talking about the burden of proof, and I'm from Alaska. I'm with you on the compelling factual circumstance. But if the government took on a burden that wasn't really its burden, right, and so your client wasn't unnoticed that it was his burden, and then there was this mistake made about subjective-objective belief, what do we do with that? You could remand for, we believe, a retrial, applying the correct standard. And I'd like to get back to Judge Hallman. So the correct standard would be that your client has the burden of proof and your client has to show subjectively that he was afraid of the bear? The burden of proof is on the government to prove beyond a reasonable doubt that my client did not have a subjective good-faith belief in self-defense. Because you think it's not an affirmative defense? No, the burden is on the government. That's very clear from the Wallin case. That comes back to the dicto that we started with, Judge Hallman started with. I'm not sure that's right as a matter of law. An affirmative defense is first raised by the defendant, and he must then establish by a preponderance of the evidence his belief that he shot in self-defense, at which point then the government has to respond in some way to defeat that showing of self-defense. Isn't that how it works? The beyond a reasonable doubt proof burden is clearly on the government. I've tried a lot of reservation assault homicide cases where the go-to defense is self-defense. The burden is on the government. This is a different case, counsel. This is not the statute that we asked you to look at. This is under a different statutory scheme. But Wallin is clear the burden is on the government. Wallin is clear that it's an affirmative defense. This question wasn't presented to Wallin. That's our problem. That's the problem. There's certainly dicta that would be misleading. It is also true that the government has never suggested that you didn't have the burden of true proof, has it? That gets to the waiver issues. The government hasn't done that. The government hasn't brought up the reporting issue. It's waived those issues. Counsel, that's why I said they may have accepted a burden that wasn't theirs, and so I'm willing to give you that. But I just want to put you on notice. I still come back to the reporting. Wait. Can I answer one question of yours? Sure. Go ahead. Judge Tolman, with respect to the notice that was given, the crime itself was established by a regulation. So if the government itself, the executive branch, can establish a crime. That's not totally true. The Enabling Act that created the Department of the Interior and the Endangered Species Act empowered the Department of the Interior to promulgate regulations for violation of which Congress said would be a misdemeanor. So I'm not sure I buy your argument that we have a separation of powers problem here because it was a congressional authorization. But the taking itself, the crime of taking, is established in the Code of Federal Regulations. Yes. So you have the executive branch. Pursuant to an act of Congress that empowers the agency to prescribe regulations to protect the species for violation of which lies a misdemeanor offense. But the agency didn't have to do that. The executive branch didn't have to do it. But Congress told the executive branch to do it. Is your argument that Congress had no power to do that? If so, I think we're in an upset decades of administrative law. Congress delegated it. I realize I can't argue against its authority to delegate. But it's the executive branch that made it a crime. That gets back to the separation of powers issue. The executive branch can't rely. But if Congress delegates to the executive branch the authority to issue rules and regulations to protect natural resources and wildlife and makes it a crime to violate those regulations, I'm struggling to see how the Constitution is offended. It lets the executive branch determine what the specific crime is. So you want Congress to enact all the rules and regulations that administrative agencies are asked to issue in order to carry out their statutory duties? Personally, I think that would enforce the separation of powers. But my point is here. You don't like the administrative state? Yes, absolutely. All right, okay. I got your argument. I'd let you run over five minutes. I do want to give Mr. Johnson a chance to respond. Thank you, Judge. Thank you very much. Do I have any time for rebuttal? I'll give you two minutes. Thank you, Your Honor. Good morning, Your Honor. It's Leif Johnson from the United States. I would like to go directly to the harmlessness issue with regard to the permit question. Yes. I want to pile on the inferences on harmlessness a little bit because I think I have three answers to that question, Your Honor. The first is if this case had been instructed properly and that was an affirmative defense, the defendant would not have been able to raise that affirmative defense because shortly prior to that in his change of plea, he said he had no permit. So he would, in essence, have subjected himself to perjury to raise the affirmative defense at trial. That's number one. Number two. But I guess all we're going to, again, if you're really addressing this as to the harmless error, which was my question. Yes. I'm suggesting that whether the government proved whether there was a permit or there wasn't a permit, I would think under the law, as he's also been questioned, I'm not sure that was the government's burden. But even though the court gave that as the instruction that it was the government's burden, it's harmless error because the government didn't have the burden, and so, therefore, we can go past that error. Right? That's true. And that's all I was trying to do with that. Now, my second question, as long as you're there. Yes. Let's go to self-defense. It seems to me that on self-defense, one could, under the case law, suggest that the government had to prove that he wasn't acting in self-defense. Yes. The government never objected to that instruction, did they? We did not. The government never said, I don't have the burden to prove that he didn't act in self-defense. That's right. And the government didn't appeal that instruction at all. Isn't that true? Did the government appeal at all? No, we did not appeal. So, therefore, how in the devil is the government suggesting, in this particular matter, that there's any problem with this instruction? Was there an instruction? Yeah. I thought this was a bench. There wasn't. Yeah. Well, I mean, I'm just trying to get it out here what the burden of self-defense is. Let me try to replicate what I understand the record to be. So there was a discussion of the elements at the Rule 29 stage, and then later the district court actually discussed the elements in its order. Yes. And we did not appeal that order. And in that, just like in the normal jury instruction, he laid out what your elements were you're going to have to prove. Yes. And he determined, after going through all of that, that you were going to have to prove it, and you assumed it, and you haven't appealed it. So why are we here arguing that at all from the government? The government either had a duty to prove it or do something to object to it. Given our arguments on appeal, our position, Your Honor, was that there needed to be, as Judge Tolman suggested, a threshold showing. We presented to the district court the traditional self-defense argument, that there needs to be some predicate showing that there is a belief in self-defense that the government must then disprove. It's not clear in the Wallin case, and it certainly is something that deserves clarification here. To the extent it's an issue of waiver, Your Honor, we would suggest that the court review it as whether or not it's an issue of law, which it is, and whether or not it prejudices the defense. And so if we get there, then we can say, as we did on the first issue, well, maybe this is just harmless error. Yes. My problem with that, if it is in harmless error, in this particular case, this defendant went before the judge on two occasions and tried to change his plea, did he not? He did. And the court would not allow him to change his plea because the court had one idea of what he had to do to change his plea, and he had another. The court's idea was that it had to be an objective self-defense that would be applied against him, and he was always under the idea, no, I did all of this in self-defense. And so the court, in both times, because it was always in his mind subjective and always in the court's mind objective, said you can't change your plea. And then we go to trial. Right. And when we get to trial, then right in the middle of the trial and right in the middle of arguing about this, there's this note on page 111. And I know the government has emphasized throughout this case this morning that Mr. Shred never said, hey, I did this in self-defense. And then the lawyer says, and I also note the fact that he elected not to testify under my advice that the court's not going to consider that. That's on page 111 and 112. So I'm having to myself a hard time seeing how this can't be harmless error if he didn't testify because he thought it was going to be objective, standard of proof rather than subjective. That's the double whammy. Yes, that is the double whammy. And so we have a two-part response, as it is. So number one, with indulgence to Alaskans, we think that given the circumstances there is a basis upon which the court could say there wasn't enough imminence here. If you look at some of the imperfect self-defense cases that we've cited in the brief. Those are factual findings. Those are factual findings. However, in a harmlessness review, clearly that was an issue for the district court. But I think the stronger harmlessness argument is the one that's been raised here. He had to report this. Well, but just a minute. If he doesn't even get to testify as to his subjective fear, he didn't put in the record anything about why he didn't report or what he might have done to report or anything. He stuck with an objective analysis on whether he had self-defense. And all of his defense, as he showed when he went for the plea hearing twice, and as he showed when he was talking to his attorney, I want to tell my story. And my story is this bear, the bear was over the fence in the pasture. The bear turned and chased my dogs. I gave two warning shots. The bear cleared to climb the fence 30 feet away, and it would not leave. And it was climbing the fence. That's his testimony. Now, to me, if you add to that his subjective idea about that, and he gets up and is allowed to testify about that, that may overcome what we've got here. That's why I'm trying to figure out this can't be harmless error in this situation. That's certainly what the court did in Wallen. I would only like to point the court to the record at page 66. So even if he testified and he says, look, I was afraid this bear was coming, the dogs, you know, the whole deal. He still had to report it. Otherwise, he was subject to a violation under the act. And we know that he didn't report it. And in page ER66, the question was asked. Mr. Shrek. The problem isn't he didn't report it. The problem is he didn't get to give all of his testimony about that report. And even if he did, he would have been able to testify about his subjective fear. Counsel, you said at ER66 the question was asked. It wasn't asked of the defendant because he didn't testify. So what were you? It was asked of the defendant. But in the interview, and the agent testified, did Mr. Shrek tell you why he never contacted authorities after shooting the bear? I asked him that, and he said he didn't want to have to deal with the hassle of contacting Fish and Wildlife. So there is a clear indication in the record that despite probably a warranted subjective fear in this case, he still did not report it. Why? Because he didn't want to hassle with it. The overall inference that the court made, I think, which was safe, was that he was hiding this. And that simply goes to whether or not he had a good faith belief. Did he ever get to explain what this hassle was? Did he ever get to talk about what his side of the story was? No. Because the judge said it's all objective. I agree that the judge made a legal error on that issue. The question then becomes, what harm was it to this case? And even if standing back the defendant had the opportunity to say, I was scared to death, that still would not have been a full defense because he didn't make that report. And furthermore, I mean, the record is clear. It is undisputed here. He was standing on the back step of his house. Now, I know that that requires a factual inference, but simply stepping out of the back step of the house would raise a situation where he could simply go back in. And he had the opportunity to address the trap. But we're not really suggesting that he ought to have to stay in his house and let his horses get run over by a bear or his dogs get eaten by a bear. He can't kill the bear. But he can get out there and run around with his car. With his car. Which is what he did. And he can do all kinds of things to shoot away the bear. He just can't shoot the bear and kill it. I agree. Unless he reports it. Unless he reports it. I see I'm out of time. Well, I'll let Mr. Rhodes go for about six minutes. If you want a couple more minutes, go ahead. Under the Endangered Species Act, I just wondered if you had a chance to look at 16 U.S.C. section 1539G. I did. You seem to say pretty clearly that in this circumstance, the person asserting the defense has the burden of proving it. Did the government assume a burden here that wasn't its burden? We did. And the question here, then, really goes to whether it prejudices the defendant to apply that burden now. And it does not. And I just wanted to summarize very quickly. He admitted he didn't have a permit, so he couldn't raise that later. We know that there was no permit available under 17.40 of the special regs that relate to grizzly bears. They preempt the other permit provisions, in our view. There is no permit available in the lower 48 states for taking a bear by an individual. Was there testimony by the Fish and Wildlife agent at the trial to that effect? No, there is no testimony. As a matter of law, the 17.40 regulations, and if I could read from 17.32, these are the regulations promulgating the permit exception to the taking requirement. And in the second sentence of those regulations, it says that such permits shall be governed by the provisions of this section unless a special rule applicable to wildlife appearing in 17.40 otherwise provides. So our reading of that statute is that the secretary, in enacting these permit exceptions, actually withdrew grizzly bears and created that special rule. And it is under that special rule, which the district court did touch on, that is the only authority for taking a bear in this case. Let me ask you a question. If there is a government, if the defendant has the burden on self-defense, does the burden ever shift to the government? We believe it does after he makes that prima facie showing. So if he makes a prima facie showing, then at that point the government does undertake the burden, again, beyond a reasonable doubt to show that it isn't self-defense. So is that the way it is? I think that's the way it is. We're talking about two issues here. If the government undertook that burden in the beginning, it is no burden that it would be any different that it would have made if he'd made a primary showing, a prima facie case, right? It probably doesn't make much difference in this case. So then really the jury instruction could have been correct, even though the government, it is a self-defense, and the government only takes the burden after it shifts back. Well, and I just want to make sure I'm clear here. I read Section 1539G to apply to the permit defense or the exemption defense. Not to self-defense? I don't believe it applies separately to self-defense. That's the way I read it. The court may disagree and switch that burden. And the reason I say that is because clearly in most of these self-defense cases there is this burden-shifting process. That is the process that we basically argued to the court when this case opened. Shall have the burden of proving that the exemption or permit is applicable. Right, and the exemption is the hardship exemption in that section. And the permit requirements are those set forth in 17.32 or the special rule. And since we think the special rule takes grizzly bears out of permits, that's the only place where a permit can be found here. And so under those regulations, the only basis for an individual to shoot a bear at this time was self-defense, and it's in 17.40. And I think that's the proper reading of how all these regulations go together. And for that reason, there is no harm on the permit issue whatsoever, and the self-defense issue I think really turns on the issue that Judge Christian raised, which is he still had to report it. With that, we would ask the court to report. Thank you very much. Thank you for the extra time. One thing I want to clarify on the record, and this is in the record, Mr. Charette did not say, I don't want to report to Fish and Wildlife. I don't want to go through the hassle of reporting to Fish and Wildlife. That's a federal agency. He said, I don't want to go through the hassle of reporting to Fish, Wildlife, and Parks. Fish, Wildlife, and Parks. I sort of take that colloquially as I don't want to tell the game warden I shot a grizzly bear, and it doesn't matter whether it's a tribal warden, a Montana Fish and Game warden, or a U.S. Fish and Wildlife agent. Am I being too generous with his wording? Yeah, he's saying, I didn't want to report to a state agency. FWP is the State Fish, Wildlife, and Parks, and I think that's important because he didn't say, I don't want to report to Fish and Wildlife, which could be construed to be a U.S. agency. I think you're reading too much jurisdictional knowledge into your client's statement. Regardless, that's what's in the record. That's what the government's able to testify to. I understand your gloss on what you think he meant. With respect to the argument that was raised that there's no way anybody could get a taking permit, the government keeps confusing hunting with taking, and even if hunting permits weren't available, a taking permit could be available. This isn't a situation where Mr. Shreve was hunting. A taking permit under the Endangered Species Act typically involves things like activities of oil drilling that might somehow interfere with polar bear or grizzly bear habitat, and requires the filing of an environmental impact statement and an assessment of whether or not it's likely that the bear population is going to be injured by the activities. It doesn't really contemplate an authorization to go out and hunt a grizzly bear. But the fact remains, at a theoretical, legally possible level, it does contemplate issuing. Could a permit have been issued if this had been a bad bear? Yes, that's my point, Your Honor. And that a taking permit could have been issued. Maybe a hunting permit, I'm not sure if that could or could not have been issued. The government keeps saying shooting and hunting. Taking is the phrase. But there's no evidence in this record that we were dealing with any kind of a, I can't remember what the statutory phrase is, but I'll call it a noxious bear that has been scavenging the local community garbage pit or killing livestock in the vicinity, that sort of thing. There is evidence. Mr. Charette said these bears were, quote, notoriously aggressive, close quote. What relief do you think your client is entitled to? I think his conviction should be vacated and, in this case, remanded for judgment of acquittal. Oh, judgment of acquittal. For failure of proof on the permit issue. And that this case is riddled with waiver. The government hasn't raised all these issues until now. And so it's waived its right to even raise all the permit issues. I want to say one thing about that. I filed my written Rule 29 motion the day after the trial, right after noon. Could not get a hold of the prosecutor. The prosecutor in the brief says the judge ruled the next day, which basically precluded the government from raising all these theories it's presenting on appeal. The reality was the court ruled three days later at four in the afternoon. And the Katakis case suggests that's a waiver. That's a basis right there. You can't raise all these arguments. And then all the arguments that have been brought up today are all new arguments. The government's just simply waived its ability to raise all these issues to the court. Okay, you're over. Thank you very much. Case just argued is submitted. We will get an answer to you as soon as we can. And the last case on the calendar is Wonder Ranch, LLC, versus the United States and the U.S. Department of Agriculture, number 16-36071.
judges: Tallman, N.R. Smith, Christen